# Housing Discrimination Complaint

**U.S. Department of Housing and Urban Development**
Office of Fair Housing
and Equal Opportunity

OMB Approval No. 2529-0011
(exp. 7/31/2001)

**Please type or print this form**

Public Reporting Burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Read this entire form and all the instructions carefully before completing. All questions should be answered. However, if you do not know the answer or if a question is not applicable, leave the question unanswered and fill out as much of the form as you can. Your complaint should be signed and dated. Where more than one individual or organization is filing the same complaint, and all information is the same, each additional individual or organization should complete boxes 1 and 7 of a separate complaint form and attach it to the original form. Complaints may be presented in person or mailed to the HUD State Office covering the State where the complaint arose (see list on back of form), or any local HUD Office, or to the Office of Fair Housing and Equal Opportunity, U.S. Department of HUD, Washington, D.C. 20410.

| This section is for HUD use only. | | | |
|---|---|---|---|
| **Number** | (Check the applicable box) ☐ Referral & Agency (specify) | **Jurisdiction** ☐ Yes ☐ No | Signature of HUD personnel who established Jurisdiction |
| **Filing Date** | ☐ Systemic ☐ Military Referral | ☐ Additional Info | |

**1. Name of Aggrieved Person or Organization** (last name, first name, middle initial) (Mr., Mrs., Miss, Ms.)

**Miami Valley Fair Housing Center, Inc.**

Home Phone

Business Phone **937-223-6035**

Street Address (city, county, State & zip code)
**505 Riverside Drive, Dayton, Montgomery County, OH 45405**

**2. Against Whom is this complaint being filed?** (last name, first name, middle initial)

**Last Name Unknown, Pam**

Phone Number **937-434-7204**

Street Address (city, county, State & zip code)
**c/o Hillside Court Apartments, 920 Great View Circle, Kettering, Montgomery County OH 45459**

Check the applicable box or boxes which describe(s) the party named above:
☐ Builder ☐ Owner ☐ Broker ☐ Salesperson ☑ Supt. or Manager ☐ Bank or Other Lender ☐ Other

If you named an individual above who appeared to be acting for a company in this case, check this box ☐ and write the name and address of the company in this space:
Name: **Hillside Court Apartments**     Address **920 Great View Circle, Kettering, Montgomery County OH 45459**

Name and identify others (if any) you believe violated the law in this case:
**Sexton Hillside LLC, owner, c/o reg. agent CT Corp. Sys., 4400 Easton Commons Way, Ste 125, Columbus, Franklin Co. OH 43219**

**3. What did the person you are complaining against do?** Check all that apply and give the most recent date these act(s) occurred in block No. 6a below.
☐ Refuse to rent, sell, or deal with you   ☐ Falsely deny housing was available   ☐ Engage in blockbusting   ☐ Discriminate in broker's services
☑ Discriminate in the conditions or terms of sale, rental occupancy, or in services or facilities   ☐ Advertise in a discriminatory way   ☐ Discriminate in financing   ☐ Intimidated, interfered, or coerced you to keep you from the full benefit of the Federal Fair Housing Law
☑ Other (explain) **Referred to other housing locations, denial of reasonable modifications**

**4. Do you believe that you were discriminated against because of your race, color, religion, sex, handicap, the presence of children under 18, or a pregnant female in the family or your national origin? Check all that apply.**

| ☐ Race or Color | ☐ Religion (specify) | ☐ Sex | ☑ Handicap | ☐ Familial Status | ☐ National Origin |
|---|---|---|---|---|---|
| ☐ Black | | ☐ Male | ☑ Physical | ☐ Presence of children under 18 in the family | ☐ Hispanic ☐ American |
| ☐ White | | ☐ Female | ☐ Mental | | ☐ Asian or ☐ Indian or ☐ Other (specify) |
| ☐ Other | | | | ☐ Pregnant female | ☐ Pacific ☐ Alaskan Islander ☐ Native |

**5. What kind of house or property was involved?**
☐ Single-family house
☐ A house or building for 2, 3, or 4 families
☑ A building for 5 families or more
☐ Other, including vacant land held for residential use (explain)

Did the owner live there?
☐ Yes
☑ No
☐ Unknown

Is the house or property
☐ Being sold?
☑ Being rented?

What is the address of the house or property?
(street, city, county, State & zip code)
**Hillside Court Apartments, 920 Great View Circle, Kettering, Montgomery County OH 45459**

**6. Summarize in your own words what happened.** Use this space for a brief and concise statement of the facts. Additional details may be submitted on an attachment.
**Note:** HUD will furnish a copy of the complaint to the person or organization against whom the complaint is made.

**Please see attached.**

**6a. When did the act(s) checked in Item 3 occur?** (Include the most recent date if several dates are involved)

**September 15th, 2017**

**7. I declare under penalty of perjury that I have read this complaint (including any attachments) and that it is true and correct.**

Signature & Date   *[signature]*   8/23/18

6. **Summarize in your own words what happened. Use this space for a brief and concise statement of the facts. Additional details may be submitted on an attachment. NOTE: HUD will furnish a copy of the complaint to the person or organization against whom the complaint is made.**

The Miami Valley Fair Housing Center, Inc. (MVFHC) conducted random testing of the Respondent's publicly advertised housing. Testing evidence indicates that despite a previous settlement entered into in 2015 wherein among other things, Respondents agreed to:

" . . . adopt a written policy stating that Respondents comply with the FHA and as such welcome all people, including those with disabilities, and will endeavor to assist persons with disabilities in order to encourage persons with disabilities to consider living in properties owned by Respondents. Said written policy will be distributed to all existing residential real estate tenants of any housing owned or operated by Sexton Companies, as well as a copy be provided to MVFHC, within thirty (30) days from the execution of the settlement or conciliation agreement. **Said policy will also be provided to all potential tenants by Respondents together with and when an application is provided."**

During this testing, neither of two different testers who contacted Hillside Court received a copy of the written policy. Additionally, testing shows a denial of a request for reasonable modification.

The first test was a test for reasonable accommodation and was conducted on June 15, 2017. While the tester was told that the reasonable accommodation would be permitted, and was given an application, the tester was not provided a copy of the written policy on the FHA as required by the 2015 settlement. After visiting Hillside Court on June 15, 2017, the reasonable accommodation tester had no further contact with the housing provider.

**On August 30, 2017 at approximately 9:36 am, the Reasonable Modification Tester ("RM Tester") called the Hillside Court Apartments at 1-844-897-9967.** The man who answered said he was Ben and the RM Tester asked about 2 bedrooms. Ben said that he had them starting at $871. The RM Tester asked if there was something available now, Ben said he had one coming available on September 8th. Ben said he had a 2-bedroom 2 bath on the first floor with a lake view and washer and dryer included. The RM Tester asked if she could look at a unit that day and Ben indicated he had a model unit. The RM Tester asked how many stairs there were to get into the unit, but Ben said he didn't think there were any. RM Tester explained that her son uses a wheelchair and that if there were steps then she would have to look into building a ramp. The RM Tester stated that she understood she would be responsible for the cost, but wanted to verify this be something they would approve to be done. Ben said that if there was a step it would be outside the unit and there would only be the one step, if any. They scheduled an appointment for 10:30-11:00 am. The call lasted about 3 minutes in length.

**On August 30, 2017 at around 10:35 am, the RM Tester arrived at the Hillside Court Apartments.** The RM Tester went into the leasing office and was greeted by a man who identified himself as Ben. He provided the RM Tester floorplans to the 2-bedroom 2 bathroom apartment she would be viewing and stated it was 970 Square feet. Ben asked the RM Tester for her name and phone number, which were provided. Ben asked if the RM Tester wanted to move by September 8th. The RM Tester said they were hoping to move by mid-September, as the owners were moving back to the area. Ben confirmed no pets and it would just be the RM Tester and her son. Ben grabbed the keys to the model unit and they both left the office and rode a golf cart to the apartment. The RM Tester expressed surprise at the number of buildings; Ben said they had about nine total. Once they reached the model unit Ben explained that the unit for rent was in the entrance to the left, but on the 1st floor and the tenant was moving out the next day. The RM Tester entered the apartment, which was fully furnished and decorated. The RM Tester confirmed the floorplan was the same for the unit that would be available. The RM Tester confirmed the appliances came with the apartment, including the microwave. Ben stated that although the walls were white, tenants were allowed to paint it any color as long as it was returned to white when they moved out. The RM Tester commented on there being a stackable washer and dryer in the apartment.

While they were looking at the tub in the bathroom, the RM Tester mentioned that her son used a lift that she had to install in his bedroom and the bathroom that needed to be attached to a stud. She explained this was important to safely transition him from a bath to his chair or from the bed to his chair. The RM Tester said she needed to make sure it would be okay to install these in both rooms. Ben said that should be just fine. The RM Tester said that she could have a company come out to install it, which said yeah should be just fine. While looking at the second bedroom, the RM Tester said the room was perfect for her son because he would have extra space for his aide who helps him about eight hours a day.

Ben then showed the RM Tester the master bedroom and bathroom before returning to the living room. The RM Tester said there was good storage and the rooms were a good size. From there Ben showed her the balcony and pointed out that the first floor units had patios with a view of the lake.

As they began leaving the apartment, the RM Tester said it was perfect but she just needed to confirm that installing the lift in the bedroom and bathroom and if a ramp outside was going to be okay. As they left the building, Ben pointed out the mailboxes on the first floor. Ben then looked at the sidewalk on the entrance where the apartment would be available to rent and said that it did have one step and pointed out there was less of an incline on that walkway as well. Once they were in the golf cart and headed back towards the office, the RM Tester explained that the van she drove had a wheelchair lift for her son built-in that loaded from the side. She then asked if she could asked if she could have a reserved parking space in front of the entrance with an access aisle for the chair lift. Ben said yeah that it should be okay to get both the reserved parking and the aisle, but he would need to verify with the manager. The RM Tester explained that at a previous property they had used a handicapped parking place, but when a neighbor's guests visited and had a handicapped placard they would take the parking spot instead, so they had to get a spot marked reserved. Ben indicated that he was only aware of the handicapped parking spaces and not the reserved spaced or access aisles.

Once in the office, Ben had a brief conversation with a man that was waiting. The RM Tester told him she thought the apartment was perfect for her family and requested an application. Ben gave her one and asked if she wanted to talk to his manager while she was there. She said yes. The manager came to the doorway and the RM Tester again explained that her son had a disability and they used a van with a wheelchair lift that lowered out the side door, so they would need an access aisle. The manager nodded and said she was sure they could figure it out. The RM Tester explained they had a problem with using a handicapped parking space where they lived before, but the neighbor's guest had a placard and used the space. The RM Tester said they needed a reserved space with the access aisle, explaining it was created a problem with not having an access aisle when someone parks to close to her van in the parking lot because then they could not use the wheelchair lift. The manager nodded in agreement and asked where she lived. The RM Tester explained that she was renting a house that the owners were moving back into. The manager said she would speak to the maintenance supervisor and see what they could figure out. The RM Tester told her that was her main concern since Ben said the lifts in the apartment were fine. The RM Tester then explained that she would need to install wall-mounted Hoyer lifts into the bedroom and bathroom to safely transfer her son in and out of the bed and bath, then asked her if that installing these would be ok and Pam nodded her head yes. The RM Tester confirmed this was okay.

The RM Tester then asked about the application fee, which Ben said was $45 and that there would be a $50 holding fee that would go toward the deposit. The RM Tester asked the manager if she needed to check back with her about the reserved parking and access aisle, as these were the deciding factors in her decision on housing. The manager told her to check back on Monday, five days later, on Labor Day. The RM Tester asked if the deposit would be the same as rent, Ben said it would be $400. The RM Tester confirmed with Ben that the application process took about two days. The RM Tester said she would get the application filled out, check in on Monday and then bring everything in. The RM Tester thanked them and exited the office. The visit ended at about 10:57am. Despite the RM Tester being given an application, she was not provided a copy of the written policy on the FHA as required by the 2015 settlement.

**On September 15, 2017 at around 12:17 pm, The RM Tester called the Hillside Court Apartments at 1-844-897-9967.** The RM Tester spoke with Ben. The RM Tester reminded him that she had been in two weeks ago and confirmed the same 2-bedroom unit on the first floor was still available and it rented for $871. The RM Tester explained she had gotten sick and didn't follow up the week before. The RM Tester said they left it as the manager was going to check regarding the reserved parking space and access aisle for her son. The RM Tester

reminded Ben that her son had a disability and used a wheelchair. Ben said that his manager had not followed up with him either so he would check with her. The RM Tester expressed that she was interested in the apartment and ready to turn in her application, but just needed to make sure they would have a reserved parking space with an access aisle. The RM Tester asked him to also confirm with the manager that the lift in the bathroom and bedroom would still be okay, because she would hate to have it installed by contractors and didn't want to get in trouble after the fact. Ben confirmed that the van was the only vehicle she had, the RM Tester said it was. The RM Tester asked Ben if there were any curb cuts or ramps that lead from the parking lot onto the sidewalk and Ben said he didn't believe there were any at that building. The RM Tester said that might be an additional ramp she could have installed. Ben took the RM Tester's name and number and said he would call her back.

**At approximately 5:30 pm on September 15th, the RM Tester received a call from 937-434-7204.** The RM Tester answered and the caller identified as Ben. The RM Tester asked if she could call him when she wasn't driving, which he said was fine.

**At about 5:56 pm on September 15th, the RM Tester called 937-434-7204.** The RM Tester spoke with Ben. He said he had spoken to the manager. Ben relayed that the manager said they could reserve a parking space as a handicapped space, but could not reserve two spaces for an apartment. Ben added that anyone with a handicap sign could use that space. The RM Tester reminded him about problems she has had with anyone being able to park in the handicapped spaces, which did not really reserve it or keep it available for her son. The RM Tester also clarified that they did not need two parking spaces but did need an access aisle to lower his chair. Ben mentioned a concrete pad partition that was raised and asked if that would work, if it would stop 4-5 inches from the ground. The RM Tester told him she did not think so because it lowers the ramp flush with the ground and doesn't stop mid-way. She then asked about the lifts in the apartment and Ben said those would be fine as long as they were professionally installed. The RM Tester said that would be fine, it's the company they are purchased from who installs those. The RM Tester asked about the curb cuts so there was a way to get up onto the sidewalk, but Ben said they would allow the modifications, but he was not sure if the company, or complex would cover that because of the way it was designed. The RM Tester said she understood, but asked if she were to pay for it to be done, whether it would be allowed. Ben said that was a potential option. The RM Tester confirmed that they could not provide a reserved parking space, and access aisle unless they could use the elevated partition. The RM Tester said she would look at the lift on her van but she did not believe it would stop on an elevated surface, as it goes down to tire level. Ben told the RM Tester if there was anything else she wanted, to put the request in writing, specifically the details so he could try to get them approved. The RM Tester asked if that was just her putting a letter in writing to him and Ben said yes. The RM Tester thanked Ben and ended the call, which lasted about 3 minutes.

The RM Tester had no further contact with the housing provider.


I declare under penalty of perjury that I have read this complaint and that it is true and correct.

Name: _____ Jim McCarthy


Sworn to and subscribed in my presence this **23rd** day of **August** 2018.

MIRANDA WILSON, Notary Public
SEAL and for the State of Ohio
My Commission Expires March 9, 2021

_____
Notary Public



# THE OHIO CIVIL RIGHTS COMMISSION

**CENTRAL OFFICE**
30 E. Broad Street, 5TH Fl
Columbus, Ohio 43215
Telephone: (614) 466-2785
Toll Free: 1-888-278-7101
TTY: (614) 466-9353
Facsimile: (614) 466-2437

**DAYTON REGIONAL OFFICE**
40 w 4TH Centre
40 W 4th Street
Suite 1900
Dayton OH 45402
Telephone: (937) 285-6500
Facsimile: (937) 285-6606

## CONCILIATION AGREEMENT AND CONSENT ORDER

**Charge Number: (DAY) H6 (24941) 03242015, 05-15-0970-8; 22A 2015 01631F**

**Charging Party: Miami Valley Fair Housing Center, Inc.**

**Respondent: Justin Noble, Leasing Agent; Hillside Court Apartments, Sexton Companies; Sexton Hillside LLC**

1.  This Conciliation Agreement is made between the Ohio Civil Rights Commission (hereinafter the "Commission"); and, **Miami Valley Fair Housing Center, Inc.** (hereinafter "Charging Party"); and, (**Justin Noble, Leasing Agent; Hillside Court Apartments, Sexton Companies; Sexton Hillside LLC** hereinafter "Respondent") and Respondent's heirs, representatives, officers, agents, employees, successors, or assignees.

2.  This Conciliation Agreement is designed to ensure voluntary compliance with the provisions of the Ohio Laws Against Discrimination – Ohio Revised Code Chapter 4112.

3.  This Conciliation Agreement is a final order of the Commission.

4.  This Conciliation Agreement does not constitute an admission by Respondent of any violation of Chapter 4112.

5.  Respondent agrees that there shall be no discrimination of any kind as prohibited by Ohio Revised Code Chapter 4112, and that there shall be no retaliation against any person because he/she has opposed a practice deemed illegal under that chapter or because he/she has filed a charge, testified, assisted, or participated in an investigation, proceeding, or hearing.

**Charge Number : (DAY) H6 (24941) 03242015, 05-15-0970-8; 22A 2015 01631F**

CO\4918395.1

6. The Charging Party hereby waives, releases, and agrees not to sue Respondent for any claims arising under Ohio Revised Code Chapter 4112 that were the subject of the above-referenced charge.

7. The Commission may investigate whether Respondent has complied (or is complying) with the terms of this Conciliation Agreement. To that end, the Commission may require written reports and/or conduct inspections, examine witnesses, and review and copy pertinent records to determine compliance with this Conciliation Agreement.

8. Respondent agrees that upon its failure to fully comply with the provisions of this Conciliation Agreement, the Commission may initiate further action including, but not limited to, the filing of a complaint in an appropriate Court of Common Pleas to seek enforcement of the terms and provisions of this Conciliation Agreement and reimbursement for any legal fees and costs incurred in filing such enforcement action.

9. **As evidence of a good faith effort to resolve the above-referenced charge, the parties agree:**

   A. That Respondents eliminate any practice or policy of denying requests for reasonable accommodation or reasonable modification made by disabled applicants or tenants or representatives of same who request them in order to enable a disabled applicant or tenant to fully use and enjoy any housing owned or operated by Sexton Companies.

   B. That Respondents agree to adopt a written policy stating that Respondents comply with the FHA and as such welcome all people, including those with disabilities, and will endeavor to assist persons with disabilities in order to encourage persons with disabilities to consider living in properties owned by Respondents. Said written policy will be distributed to all existing Ohio residential real estate tenants of any Ohio housing owned or operated by Sexton Companies, as well as a copy be provided to MVFHC, within thirty (30) days from the execution of the settlement or conciliation agreement. Said policy will also be provided to all potential tenants by Respondents together with and when an application is provided.

   C. That Respondents agree, for a term of three years, to modify units upon request, making the units accessible to deaf and hard of hearing tenants by installing the appropriate fire alarm and doorbell features. Said modifications will be at the Respondents' expense and will apply to all Ohio rental housing in the Sexton Companies' portfolio. Each Ohio apartment complex will provide prospective tenants written information about said modification together with and when an application is provided. A copy of said written information will be provided to MVFHC within thirty (30) days from the execution of the settlement or conciliation agreement.

**Charge Number :  (DAY) H6 (24941) 03242015, 05-15-0970-8; 22A 2015 01631F**

9. **(CONT):  As evidence of a good faith effort to resolve the above-referenced charge, the parties agree:**

D. That Respondents agree to send at least four (4) Ohio employees and/or agents who interact with tenants or who have decision-making authority with regard to renting or leasing any residential properties, to one (1), 3-hour Fair Housing Act compliance course, taught by the MVFHC, once per year for the next two (2) years. The cost for said compliance education shall be the sole responsibility of the Respondents at the rate of $75.00 per person.  The Respondent affirms that one (1) employee/agent will be from the Columbus apartment complex. All individuals will attend the first course by December 31, 2015.

E. That Respondents pay Fourteen Thousand Dollars and No Cents ($14,000.00) to the Miami Valley Fair Housing Center, Inc., as undifferentiated compensatory and punitive damages, within sixty (60) days from the execution of the settlement or conciliation agreement herein.

_____
**RESPONDENT**

6/29/15
**DATE**

Title _____

_____
**CHARGING PARTY**

7/15/15
**DATE**

**OHIO CIVIL RIGHTS COMMISSION**

_____

7/15/15
**DATE**

Title _____

_____

**Charge Number :  (DAY) H6 (24941) 03242015, 05-15-0970-8; 22A 2015 01631F**

Page 3 of 3

CO\4918395.1